1  **LAW OFFICES OF  RONALD A. MARRON**
2  RONALD A. MARRON (SBN 175650)
   *ron@consumersadvocates.com*
3  MICHAEL T. HOUCHIN (SBN 305541)
   *mike@consumersadvocates.com*
4  651 Arroyo Drive
   San Diego, California 92103
5  Telephone: (619) 696-9006
   Facsimile: (619) 564-6665
6  ***Attorneys for Plaintiff and the Proposed Class***

7

8                    **UNITED STATES DISTRICT COURT**

9

10              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  HORTENSE SIMS, on behalf of        Case No:
    herself and all others similarly
12  situated,

13            Plaintiff,                **CLASS ACTION COMPLAINT**

14        v.

15                                      **DEMAND FOR JURY TRIAL**

16  CAMPBELL SOUP COMPANY, a
17  New Jersey Corporation; and
    Y&R, a New York Corporation;
18

19            Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ..................................................................1

II.    PARTIES ................................................................................................3

III.   FACTUAL ALLEGATIONS ....................................................................3

A.     Defendants sell artificially-flavored sugar-water labeled as if it were fruit juice. ..........................................................................................3

B.     The Products are not a "good source of antioxidants." .................................4

C.     Defendants conceal that the Products are artificially flavored. ......................5

D.     Defendant's competitors label their products lawfully. ...............................11

E.     Plaintiff's and Class Purchases of the Products. ...........................................12

IV.    DELAYED DISCOVERY ........................................................................14

V.     CLASS ACTION ALLEGATIONS ..........................................................14

VI.    CAUSES OF ACTION ..............................................................................17

       First Cause of Action: Violation of the CLRA ...........................................17

       Second Cause of Action: Violation of the UCL, Unlawful Prong...............19

       Third Cause of Action: Violation of the UCL, Unfair Prong......................20

       Fourth Cause of Action: Violation of False Advertising Law......................22

       Fifth Cause of Action: Breach of Express Warranty...................................23

       Sixth Cause of Action:  Breach of Implied Warranty .................................23

VII.   PRAYER FOR RELIEF.............................................................................25

VIII.  JURY DEMAND ........................................................................................26

i

Hortense Sims ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, hereby brings this action against Campbell Soup Company ("Campbell's) and Y&R, alleging that certain products manufactured, packaged, labeled, advertised, distributed and sold by these Defendants are misbranded and falsely advertised in California and otherwise violate California law, and upon information and belief and investigation of counsel alleges as follows:

## I.    JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendants are citizens of a state different from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2.     This Court has both general and specific personal jurisdiction over the Defendants.

3.     The Court has personal jurisdiction over Defendants because the companies have both affirmatively established and maintained contacts with the State of California.

4.     This Court has specific personal jurisdiction arising from Defendants' decision to advertise and sell the Products in California. Defendants have sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the manufacture, promotion, sales, and marketing of the Products to consumers within the State to render the exercise of jurisdiction by this Court reasonable.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this venue, including specifically the relevant transactions between Plaintiff and the Defendants, and, in the alternative, the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## II.    NATURE OF THE ACTION

6.     This is a California consumer class action for violations of California consumer protection laws.

7.   Defendants manufacture, package, distribute, advertise, market, and sell fruit-flavored beverage products under the trade name "V8 Splash®" (the "Products").[1]

8.   These Products are all falsely advertised in California.

9.   First, the Products' labels convey to the consumer that these are healthy, natural beverages, brimming with healthful fruit and vegetable juices.

10.   This is simply false.

11.   The Products consist of water and corn syrup with minimal amounts of reconstituted carrot juice and 2% *or less* of the juice of <u>all</u> the fruits and berries the Products are named for combined.

12.   Defendant's "Berry Blend" Product, for example, contains less than 2% of the juice of all of the berries shown on its label, <u>combined</u>.

13.   Defendant's "Strawberry Kiwi" Product contains less than 2% of the juices of kiwi fruit and strawberries combined.

14.   Defendants cover up the near-absence of actual fruit juice in the Products by instead adding artificial flavoring but conceal this fact from consumers.

15.   The Products are labeled as if they are flavored only with natural ingredients when in fact the Products are artificially flavored.

16.   Defendants' packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium, 'all natural' product with natural flavoring ingredients instead of a product that is artificially flavored.

17.   Plaintiff, who was deceived by Defendants' unlawful conduct and purchased one or more of the Products multiple times in California during the proposed Class Period, brings this action, on her own behalf and on behalf of California consumers similarly situated, to remedy Defendant's unlawful acts.

---

[1] A full list of the Products is shown in Table 1 in paragraph 81 below.

CLASS ACTION COMPLAINT

18.    On behalf of the Class as defined herein, Plaintiff seeks an order compelling Defendants to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Products in violation of California law; (2) re-label or recall all existing deceptively packaged Products; (3) conduct a corrective advertising campaign to fully inform California consumers; (4) award Plaintiff and other Class-members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and attorney fees.

## III.    PARTIES

19.    Defendant Campbell Soup Company ("Campbell's" or "Defendant") manufactures, packages, labels, advertises, markets, distributes, and sells the Products in California and throughout the United States.

20.    Campbell's is a New Jersey corporation with its headquarters and principal place of business in Camden, New Jersey. Campbell's is registered to do business in California as entity number C0206561.

21.    Defendant Y&R is and was the principal advertising agency responsible for the labeling and advertising of the Products throughout the proposed Class Period. Y&R wrote or approved false and misleading labeling and advertising copy that facilitated the sale of the misbranded Products to consumers in California during the Class Period.

22.    Y&R is a New York corporation with its principal place of business in New York City, New York.

23.    These Defendants, along with any Doe Defendants later identified in the litigation, are jointly responsible for the violations of California law described herein.

24.    Plaintiff Hortense Sims ("Plaintiff") is a resident and citizen of Riverside County, California, who purchased the Products multiple times during the Class Period in Perris and southern California for personal and household consumption.

## IV.    FACTUAL ALLEGATIONS

A. <u>Defendants sell artificially-flavored sugar-water labeled as if it were fruit juice.</u>

25.    The Products' labels convey to California consumers that they are purchasing a healthful, natural juice product made solely from fresh fruits and vegetables.

26.     The Products, however, are almost entirely sugar-water, with minuscule amounts of fruit and vegetable juice added for color and texture.

27.     The Products consist of 95% water and high fructose corn syrup, topped up with 3% reconstituted carrot juice and 2% *or less* of the juice of all the fruits and berries for which the Products are named.

28.     The V8 Splash "Berry Blend," for example, contains only minuscule amounts of actual juice from each of the berries featured on the Product's front label.

29.     For each of the luscious ripe berries displayed on the label, the actual juice in the Product is only a 0.004 fraction of the contents – less than ½ of 1%.

30.     This quantity is not enough to make any of the Products taste like any of the fruits or berries displayed on the labels.

31.     The Products are instead artificially flavored to resemble the fruit and berry juices they are labeled to represent.

32.     Instead of healthful fruit juice, the Products instead contain massive amounts of refined sugar. The "Tropical Blend" V8 Splash Product, for example, contains 18 grams of sugar per serving – more than fully-loaded Grape Kool-Aid.

33.     The Products' labels mislead consumers into thinking they are buying a healthful blend of fruit and vegetable juices instead of artificially-flavored sugar-water.

B.   The Products are not a "good source of antioxidants."

34.     Defendants advertise the Products as "a source of" or "a good source of Antioxidant Vitamins A & C."

35.     The Products are not a good source of antioxidants or vitamin C.

36.     In fact, the amount of refined sugar in the Products depletes the body of antioxidants and blocks vitamin and mineral absorption and healthful benefits.

37.     Excess sugar consumption damages cells and promotes nutrient deficiency.[2]

_____

[2] J. DiNicolantonio, A. Berger; "Added sugars drive nutrient and energy deficit in obesity." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4975866/; (last visited March 22, 2018).

4

38.     Excess sugar consumption depletes vitamins and minerals, including those necessary for beneficial antioxidant health effects. Excess sugar consumption prevents antioxidant vitamins and minerals from working effectively in the body.

39.     Excess sugar consumption interferes with the body's metabolism of vitamins including vitamin C.

40.     Excess sugar consumption also depletes and blocks the absorption of vitamin D, calcium, magnesium, potassium, and chromium.

41.     Excess sugar consumption depletes thiamine, riboflavin, niacin, and cellular phosphate necessary for energy metabolism.

42.     Far from being a "good source" of antioxidants, the Products contribute to the depletion of all these nutrients from the human body.

43.     Defendants misleadingly label the Products as if they contain healthful fruit juices and supply healthful vitamins, when in fact they consist largely of sugar-water, the excess consumption of which interferes with the proper metabolism of those vitamins.

C.   Defendants conceal that the Products are artificially flavored.

44.     Defendants not only misleadingly label the Products as if they were healthful fruit juice instead of sugar-water, Defendants also unlawfully conceal from California consumers that the Products are artificially flavored.

45.     To disguise the fact that the Products consist largely of sugar-water, Defendant adds artificial flavoring that mimics the sensory impression of fruit juice.

46.     California consumers, like American consumers nationwide, seek out natural food products and are willing to pay significantly more for such products when compared to food products with artificial ingredients.[3]

47.     Products that contain only natural ingredients thus command a price premium

---

[3] "*Consumers Want Healthy Foods - And Will Pay More For Them*"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited March 22, 2018).

1  compared to similar products that contain synthetic ingredients such as artificial flavors.

2      48.    To appeal to consumers who seek out natural food products and are willing

3  to pay more for them, Defendants label and advertise the Products as if they were

4  exclusively naturally-flavored.

5      49.    Defendant's "Berry Blend" Product label, for example, shows life-like

6  pictorial representations of ripe, juicy strawberries, raspberries, and blackberries.

7      50.    Below is a true and accurate representation of the V8 Splash "Berry Blend"

8  Product label.

9                          <u>V8 Splash® Berry Blend</u>



CLASS ACTION COMPLAINT

51.     The Product's name, "Berry Blend", along with the pictorial representations of life-like ripe berries, by operation of California law communicates and warrants to the consumer that the Product is flavored only with natural fruit juices or flavors.

52.     Defendants further advertise all the Products as having "a refreshing combination of natural fruit flavors."

53.     This is false. The Products are artificially flavored.

54.     Each of the Products contains an ingredient identified as "malic acid."

55.     The malic acid that Defendant uses in these Products is d-l malic acid, a synthetic petrochemical added to the Products to simulate the flavor of real fruit.

56.     Defendant adds synthetic d-l malic acid to the Products to simulate the "tart taste" of fresh fruit[4] and conceal the fact that the Products are 95% water and corn syrup and less than 2% fruit juice.

57.     All of the Products contain the same undisclosed artificial flavoring.

58.     All of the Products' labels violate California law in multiple ways.

59.     First, because the Products contain artificial flavoring ingredients that simulate and reinforce the Products' characterizing flavors, the front labels are required by law to prominently disclose that artificial flavoring. Failing to do so falsely informs the consumer that the Products are flavored only with natural juices or flavors. Cal. Health & Saf. Code § 109875, *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.[5]

60.     Second, the Products violate California and federal law because the labels incorrectly identify the artificial flavoring ingredient only as a generic "malic acid" instead

---

[4] Campbell's states that it adds malic acid to food products "where a tart taste is expected…" *See* Campbell's "Our Ingredients" website, http://www.whatsinmyfood.com/ingredient/; (last visited March 22, 2018).

[5] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875, *et seq.*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate FDCA regulations necessarily therefore violates California's Sherman Law. *Id*. at § 110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

CLASS ACTION COMPLAINT

of using the specific, non-generic name of the ingredient, d-l malic acid. *See* 21 C.F.R. § 101.4(a)(1).

61.     There is a different, naturally-occurring form of malic acid found in some fruits and vegetables.

62.     Defendants do not use this type of malic acid; they instead add an industrial chemical called d-l malic acid[6] in the form of a racemic mixture of d- and l-isomers.

63.     This type of 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

64.     Both the natural and unnatural forms of malic acid are considered "GRAS" (generally recognized as safe) for use as flavorings in foods marketed to adults[7]; the d-malic acid form, however, has never been extensively studied for its health effects in human beings.

65.     Defendant uses the artificial petrochemical d-l malic acid in its Products but pretends otherwise, conflating the natural and the artificial flavorings, misbranding the Products and deceiving consumers.

66.     Because the Products contain artificial flavoring, California law requires the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

67.     The Products have neither of the required disclosures.

68.     California law, incorporating U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

---

[6] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.
[7] The d-l form of malic acid, the one used by Defendant, is forbidden for use in baby foods out of health concerns if consumed by infants.

CLASS ACTION COMPLAINT

69.     Any recognizable primary flavor identified directly or indirectly on the front label of a food Product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor".

70.     Each of the fruits and berries represented on the Products' front labels, either in text or in recognizable pictures, are considered primary recognizable flavors and are therefore characterizing flavors for each Product.

71.     If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored."[8]

72.     A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food."[9]

73.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id*.

74.     The synthetic d-l malic acid in the Products simulates, resembles, and reinforces the characterizing fruit flavors for all of the listed Products.

75.     Under California statutory labeling requirements as well, Defendants were required to place prominently on the Products' front labels a notice sufficient to allow California consumers to understand that the Products contained artificial flavorings.

76.     Defendants failed to do so, deceiving consumers and violating California law.

---

[8] California's Sherman Law, incorporating 21 C.F.R. § 101.22(i) (3), (4).
[9] California's Sherman Law, incorporating 21 C.F.R. § 102.5(c).

CLASS ACTION COMPLAINT

77.     Plaintiff and the Class were unaware that the Products contained artificial flavoring when they purchased them.

78.     When purchasing the Products, Plaintiff and the Class were seeking products of particular qualities, ones that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

79.     Plaintiff is not alone in these purchasing preferences. As reported in Forbes Magazine, eighty-eight percent (88%) of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]— from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[10]   Forty-one percent (41%) of consumers rated the absence of artificial flavors in food products as "Very Important," and eighty percent (80%) of North American consumers are willing to pay a premium for foods with no artificial ingredients.[11]

80.     John Compton, a Fortune 50 food and beverage industry CEO, spoke to investors at the Morgan Stanley Consumer & Retail Conference, stating, "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

81.     Defendants' labeling and advertising reflects these consumer preferences — not by making the Products with only natural ingredients, but instead by concealing the fact that the Products contain artificial flavors.

82.     Table 1, below, lists the V8 Splash® Products included in this action.

---

[10] "*Consumers Want Healthy Foods - And Will Pay More For Them*"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited March 22, 2018).

[11] The Nielsen Company, Global Health and Wellness Survey, "Healthy Eating Habits Around the World," 2015; https://www.nielsen.com/content/dam/nielsenglobal/eu/nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf; (last visited March 22, 2018)

CLASS ACTION COMPLAINT

Table 1:  V8 Splash® Products ("Products")[12]

| V8 Splash® Berry Blend | V8 Splash® Diet Berry Blend |
|---|---|
| V8 Splash® Strawberry Kiwi | V8 Splash® Fruit Medley |
| V8 Splash® Tropical Blend | V8 Splash® Diet Tropical Blend |
| V8 Splash® Cherry Pomegranate | |

83.     Each of these Product's labels deceived consumers into paying a price premium for an artificially-flavored product that was worth less than the naturally-flavored product promised by the labels.

84.     California's Health & Safety Code states that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."  Cal. Health & Saf. Code § 110740.

85.      California law therefore required Defendants to include on the Products' labels a notice alerting California consumers that the Products are artificially flavored.

86.     Defendants failed to do so.

87.     Because the Products violated California law, they were misbranded and illegal to advertise, transport, distribute, or to sell in California. Cal. Health & Saf. Code § 110740; § 110760; § 110765.

88.     Plaintiff lost money as a result of Defendants' conduct because she paid a price premium for a product that contained undisclosed artificial flavors when she sought to purchase a naturally-flavored product.

D. Defendant's competitors label their products lawfully.

89.     Campbell's not only deceives consumers but also gains an unfair commercial advantage in the marketplace by labeling the Products deceptively.

90.     Manufacturers of competing beverage products label their products lawfully.

91.     Competing manufacturers correctly label their artificially-flavored beverage

---

[12] The Products are variously available in 12, 16, and 64-ounce plastic bottles, and in 5.5-, 8-, or 11.5-ounce metal cans.

CLASS ACTION COMPLAINT

products as "Artificially Flavored."

92.     Other competing manufacturers, offering products whose labels suggest just as Defendant's do that their products are naturally flavored, truly are flavored only with natural ingredients.

93.     Defendant, however, conceals their use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting competitors as well as consumers.

94.     Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. These manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendant's competitors do so lawfully. Defendant does not.

E.  Plaintiff's and Class Purchases of the Products.

95.     Plaintiff purchased the Products in California during the Class Period as defined herein.

96.     Plaintiff purchased V8 Splash Products multiple times since January 2014, most recently at the WinCo Foods store located at 3150 North Case Road in Perris, California.

97.     The Products were purchased at the marked retail prices, typically between $1.98 and $2.98 for a 64-ounce container.

98.     Plaintiff first discovered Defendants' unlawful acts described herein in March 2018, when she learned the Products' characterizing flavors were deceptively created or reinforced using artificial flavoring even though Defendants failed to disclose that fact on the Products' labels.

99.     Plaintiff was deceived by and relied upon the Products' deceptive labeling, and specifically the omission of the fact that these Products contain artificial flavoring. Plaintiff purchased these Products believing they were naturally-flavored, based on the Product's deceptive labeling and failure to disclose that it was artificially flavored.

CLASS ACTION COMPLAINT

100.   Neither Plaintiff nor any of the Class members, as reasonable consumers, are required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that a product's front label is false and misleading, or to search the label for information that federal and state regulations require be displayed prominently on the front – and, in fact, under state law are entitled to rely on statements that Defendants deliberately place on the Products' labeling.

101.   Defendants, but not Plaintiff or the Class, knew that this labeling was in violation of state law.

102.   Because Plaintiff reasonably assumed the Products to be free of artificial flavoring, based on the Product labels, when they were not, she did not receive the benefit of her purchases. Instead of receiving the benefit of products free of artificial flavoring, she received Products that were unlawfully labeled so as to deceive the consumer into believing that they were exclusively naturally flavored and contain no artificial flavoring, in violation of federal and state labeling regulations.

103.   Plaintiff would not have purchased the Product in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated California law, Plaintiff would not have been injured.

104.   The Product was worth less than what Plaintiff paid for it and Class members would not have paid as much as they have for the Products absent Defendants' false and misleading statements and omissions.

105.   Plaintiff and the Class members paid a price premium for each of the Products that they purchased. That price premium will be determined by the fact finder at trial based on evidence adduced then. The anticipated price premium is significantly less than the full retail price of the Products.

106.   Plaintiff and the Class therefore lost money in the amount of the price-premium paid as a result of Defendants' unlawful behavior. Plaintiff and Class members altered their position to their detriment and suffered loss in an amount equal to the amount of the price premium when they paid for the Product.

CLASS ACTION COMPLAINT

107.   Plaintiff intends to, desires to, and will purchase the Products again when she can do so with the assurance that Products' labels, which indicate that the Products are naturally-flavored, are lawful and consistent with each Product's ingredients.

## V.   **DELAYED DISCOVERY**

108.   Plaintiff did not discover that Defendants' labeling of the Products was false and misleading until March 2018 when she learned the Products contained undisclosed artificial flavoring.

109.   Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in her purchase and consumption of the Products. Nevertheless, she would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, she relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with state law. Furthermore, Defendants' labeling practices and non-disclosures—in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendant puts in the Products—impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

110.   Because Defendants actively concealed their illegal conduct by mislabeling the malic acid ingredient in the Products, preventing Plaintiff and the Class from discovering their violations of state law, the Class is entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.   **CLASS ACTION ALLEGATIONS**

111.   Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23.

112.   The initial proposed Class is defined as follows:

> All California citizens who purchased the Products in California on or
> after January 1, 2012, for personal use and not for resale, excluding
> Defendants and Defendants' officers, directors, employees, agents and

14

affiliates, and the Court and its staff.

113. During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or d-l malic acid and were otherwise improperly labeled. Defendants failed to label the Products as required by California law.

114. During the Class Period, Class members purchased the misbranded Products, paying a price premium for those Products compared to similar products lawfully labeled.

115. The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in the proposed Class.

116. The proposed Class satisfies numerosity. The Products are offered for sale at over 100 supermarkets and other stores in California; the Class numbers at minimum in the tens of thousands. Individual joinder of the Class members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

117. The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result, purchasing Products that were illegal to sell in California.

118. The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase prices which are generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

119. Because Defendants' misrepresentations were made on the label of the Products, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendants can continue to deceive consumers and violate California law with impunity.

CLASS ACTION COMPLAINT

120.   The proposed Class representative satisfies adequacy of representation. Plaintiff is an adequate representative of the Class as she seeks relief for the Class, her interests do not conflict with the interests of the Class members, and she has no interests antagonistic to those of other Class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

121.   There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

122.   Questions of law and fact common to Plaintiff and the Class include:

   a.   Whether Defendants failed to disclose the presence of the artificial flavoring ingredient d-l malic acid in the Product;

   b.   Whether Defendants' labeling omissions and representations constituted false advertising under California law;

   c.   Whether Defendants' conduct constituted a violation of California's Unfair Competition Law;

   d.   Whether Defendants' conduct constituted a violation of California's Consumer Legal Remedies Act;

   e.   Whether Defendants' label statements claiming solely natural flavorings was an affirmative representation of the Product's composition and conveyed an express warranty;

   f.   Whether Defendants' conduct constitutes a breach of implied warranties under California's Commercial Code;

   g.   Whether the statute of limitations should be tolled on behalf of the Class;

   h.   Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

   i.   Whether members of the Class are entitled to any such further

16

1    relief as the Court deems appropriate.

2    123.   Plaintiff will fairly and adequately protect the interests of the Class, has no

3    interests that are incompatible with the interests of the Class, and has retained counsel

4    competent and experienced in class litigation.

5    124.   Defendants have acted on grounds applicable to the entire Class, making final

6    injunctive relief or declaratory relief appropriate for the Class as a whole.

7    125.   Class treatment is therefore appropriate under California law.

8    126.   Class damages will be adduced at trial through expert testimony and other

9    competent evidence.

10   127.   California law holds that the price-premium consumers paid for the falsely-

11   advertised Products, as a percentage of the Products' retail prices, is a proper measure of

12   Class damages.

13   128.   Food-industry consumer research is consistent and readily supports such

14   estimates of that price-premium, as consumers quantitatively report that they seek out,

15   value, and are willing to pay a premium for food products with no artificial flavors.

16   129.   On information and belief, based on publicly-available information, Plaintiff

17   alleges that the total amount in controversy exclusive of fees, costs, and interest, based on

18   the estimated price premium and Product revenues for sales to the Class in California

19   during the proposed Class Period, exceeds $5 million.

## VII.   CAUSES OF ACTION

### First Cause of Action: Violation of the CLRA

22   130.   Plaintiff realleges and incorporates by reference the allegations made

23   elsewhere in the Complaint as if set forth in full herein.

24   131.   The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et*

25   *seq*. prohibits any unfair, deceptive and unlawful practices, and unconscionable

26   commercial practices in connection with the sale of any goods or services to consumers.

27   132.   Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code §

28   1761(d). The Products are a "good" as defined by Cal. Civ. Code § 1761.

17

133.   Defendants' failure to label the Products in accordance with federal and state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

134.   Defendants' conduct violates the Consumers Legal Remedies Act, including but not limited to, the following provisions:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

135.   As a result of Defendants' violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premium they paid for the unlawfully labeled and marketed Products, which they would not have paid had the Products been labeled correctly, and in the form of the reduced value of the Products in relation to the Products as advertised.

136.   On or about March 23, 2018, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendants which complies with California Civil Code § 1782(a).  Plaintiff sent Defendants, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A copy of Plaintiff's March 23, 2018 CLRA letters to Defendants are attached hereto as Exhibit 1.

137.   Wherefore, Plaintiff seeks injunctive relief for Defendants' violations of the CLRA.  If Defendants fail to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend her complaint to add a claim for damages under the CLRA.

18

CLASS ACTION COMPLAINT

**Second Cause of Action: Violation of the UCL, Unlawful Prong**

138.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

139.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

140.   The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

141.   Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, California's Sherman Law as it incorporates U.S. FDA regulations as well as specific California food labeling regulations including Cal. Health & Saf. Code § 114089.

142.   Among other violations, Defendants' conduct in unlawfully packaging and distributing the Products in commerce in California violated Sherman Law packaging and labeling regulations.

143.   The Products' labels fail to disclose that each contains a synthetic artificial flavoring in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

144.   The Products contains d-l malic acid.

145.   The d-l malic acid is a flavoring material; it is included in the Products to create, simulate and reinforce the characterizing fruit flavors.

146.   The d-l malic acid in the Products is derived from petrochemicals, not from a natural material as defined in 21 C.F.R. § 101.22, and is therefore by law an artificial flavor.

147.   Defendants fail to inform consumers of the presence of the artificial flavor in the Product, on either the front-of-package or back labels as required by law.

148.   Defendants' practices are therefore unlawful as defined in Section 17200 of the California Civil Code.

CLASS ACTION COMPLAINT

**Third Cause of Action: Violation of the UCL, Unfair Prong**

149.  Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

150.  Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . .business act or practice." Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

151.  The Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendants does not outweigh the gravity of the harm to consumers.

152.  While Defendants' decision to label the Products deceptively and in violation of California law may have some utility to Defendant in that it allows Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the retail price or at all if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Product lawfully, this utility is small and far outweighed by the gravity of the harm Defendants inflict upon California consumers.

153.  Defendants' conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unlawful, unfair, and unethical behavior.

154.  Moreover, Defendants' practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

155.  Plaintiff's and all Class members' purchases of the Products all took place in California.

156.  Defendants labeled the Products in violation of federal regulations and California law requiring truth in labeling.

157.  Defendants consciously failed to disclose material facts to Plaintiff and the Class in Defendants' advertising and marketing of the Products.

158.   Defendants' conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

159.   Defendants' conduct is "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22(c), which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

160.   Defendants intended that Plaintiff and the Class rely on Defendants' acts of omission so that Plaintiff and the other Class members would purchase the Products.

161.   Had Defendants disclosed all material information regarding the Products in product advertising and marketing, Plaintiff and the Class would not have purchased the Products or would have paid less for the Products than they did.

162.   Plaintiff and the Class suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising:  they were denied the benefit of the bargain when they decided to purchase the Products based on Defendants' violation of the applicable laws and regulations, or to purchase the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

163.   Plaintiff and the Class suffered an ascertainable loss of money. The acts, omissions and practices of Defendants detailed herein proximately caused Plaintiff and the other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, excess monies spent to purchase the Products they otherwise would not have and the price premium they paid for those Products, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

164.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading

advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

165.   Pursuant to California Business & Professions Code § 17203, Plaintiff will seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the amount of money improperly collected to all those who purchased the Products.

### Fourth Cause of Action: Violation of False Advertising Law

166.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

167.   Defendants manufactured, packaged, labeled, advertised, and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose included artificial flavor as required by state and federal food labeling regulations.

168.   The Products' labeling and advertising in California falsely describe the Products as if they were naturally-flavored.

169.   Under California's False Advertising Law, Business and Professions Code § 17500, *et seq.*,

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code § 17500.

170.   Defendants' labeling and advertising statements, communicating to consumers that the Products contain no artificial flavors and concealing the fact that these

CLASS ACTION COMPLAINT

Products contain a synthetic artificial flavor, were untrue and misleading, and Defendants at a minimum by the exercise of reasonable care should have known those actions were false or misleading.  Defendants' conduct violated California's False Advertising Law.

## Fifth Cause of Action: Breach of Express Warranty

171.   Plaintiff realleges and incorporates by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

172.   The Products' front labels misleadingly claim by operation of California law that the Products are flavored only with the listed natural fruit flavors.

173.   The Products' labels state that the Products are, for example, "berry flavored" or "strawberry and kiwi" flavored, with only other "natural flavors."

174.   These promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendants breached; the Products are artificially flavored.

175.   Defendant sold the goods to Plaintiff and Class members who bought the goods from Defendant.

176.   As a result, Plaintiff and the Class members did not receive goods as warranted by Defendant.

177.   Within a reasonable amount of time after Plaintiff discovered that the Products contained synthetic ingredients, Plaintiff notified the Defendant of such breach.

178.   As a proximate result of this breach of warranty by Defendant, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

## Sixth Cause of Action:  Breach of Implied Warranty

179.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

180.   Defendants' label representations also created implied warranties that the Product was suitable for a particular purpose, specifically as a naturally-flavored food product, and created implied warranties by operation of California statute.

181.   Defendants breached these warranties as well.

23

182.   The Products' front labels misleadingly imply that these Products are flavored with the natural ingredients comprising the characterizing flavors.

183.   As alleged in detail above, at the time of purchase Defendants had reason to know that Plaintiffs, as well as all members of the Class, intended to use the Product as a naturally-flavored food product.

184.   This became part of the basis of the bargain between the parties.

185.   Based on that implied warranty, Defendant sold the goods to Plaintiff and other Class members who bought the goods from Defendant.

186.   At the time of purchase, Defendant knew or had reason to know that Plaintiff and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiff justifiably relied on Defendants' skill and judgment.

187.   The Products were not suitable for this purpose.

188.   Plaintiff purchased the Product believing it had the qualities Plaintiff sought, based on the deceptive advertising and labeling, but the Product was actually unsatisfactory to Plaintiff for the reasons described herein.

189.   Further, the Products were not merchantable in California because they were not of the same quality as other products in the category generally acceptable in the trade.

190.   The Products would not pass without objection in the trade when packaged with the existing labels, because the Products were misbranded and illegal to sell in California.  Cal. Comm. Code § 2314(2)(a).

191.   The Products also were not acceptable commercially and breached their implied warranty because these Products were not adequately packaged and labeled as required. Cal. Comm. Code § 2314(2)(e).

192.   The Products also were not acceptable commercially and breached the implied statutory warranty because they did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code § 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

193.   By offering the Products for sale and distributing the Products in California, Defendants also warranted that the Products were not misbranded and were legal to purchase in California. Because the Products were misbranded in several regards and were therefore illegal to sell or offer for sale in California, Defendants breached this warranty as well.

194.   As a result of this breach, Plaintiff and the Class members did not receive goods as impliedly warranted by Defendants.

195.   Within a reasonable amount of time after the Plaintiff discovered that the Products contained synthetic flavoring ingredients, Plaintiff notified the Defendants of such breach.

196.   As a proximate result of this breach of warranty, Plaintiff and the Class have been damaged in an amount to be determined at trial.

197.   As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated in California, prays for judgment against Defendants as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class, and requiring Defendants to bear the cost of class notice;

B.   An order declaring that the conduct complained of herein violates the CLRA;

C.   An order declaring that the conduct complained of herein violates the UCL;

D.   An order declaring that the conduct complained of herein violates the FAL;

E.   An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

F.   An order requiring Defendants to disgorge any benefits received from Plaintiff and any unjust enrichment realized as a result of the improper and

misleading labeling, advertising, and marketing of the Products;

G.     An order requiring Defendants to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

H.     An award of punitive damages in an amount to be proven at trial;

I.     An order enjoining Defendants' deceptive and unfair practices;

J.     An order requiring Defendants to conduct corrective advertising;

K.     An award of pre-judgment and post-judgment interest;

L.     An award of attorney fees and costs; and

M.     Such other and further relief as this Court may deem just, equitable, or proper.

## IX.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: April 2, 2018            Respectfully Submitted,

                               */s/ Ronald A. Marron*
                               Ronald A. Marron

                               **LAW OFFICES OF RONALD A. MARRON**
                               Ronald A. Marron
                               *ron@consumersadvocates.com*
                               Michael T. Houchin
                               *mike@consumersadvocates.com*
                               651 Arroyo Drive
                               San Diego, CA 92103
                               Telephone: (619) 696-9006
                               Fax: (619) 564-6665
                               ***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT