1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2

*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)

3

*mike@consumersadvocates.com*

4

651 Arroyo Drive
San Diego, California 92103

5

Telephone: (619) 696-9006
Facsimile: (619) 564-6665

6

***Attorneys for Plaintiff and the Proposed Class***

7

8

9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA**

11

12

HORTENSE SIMS, on behalf of
herself, all others similarly situated, and

13

the general public,

14

15

Plaintiff,

16

vs.

17

CAMPBELL SOUP COMPANY, a
New Jersey Corporation; and Y&R, a

18

New York Corporation,

19

20

Defendants.

21

22

23

CASE NO. 5:18-cv-00668-PSG-SP

CLASS ACTION

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

Date:     September 24, 2018
Time:     1:30 p.m.
Ctrm:     6A
Judge:    Hon. Philip S. Gutierrez

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................3

III.  LEGAL STANDARD ...............................................................5

IV.  ARGUMENT...........................................................................6

   A.    Plaintiff States a Plausible Claim for Relief ................................6

      1.  *Malic Acid is Used as an Artificial Flavoring Ingredient in the* Splash *Products* ...........................................................................6

      2.  *The Complaint Sufficiently Alleges that Malic Acid Functions as an Artificial Flavor in the* Splash *Products and that it Must be Declared on the Front of the Packaging*...........................................................8

   B.    Whether a Labeling Statement is Likely to Deceive a Reasonable Consumer is Not Appropriate for Determination on a Motion to Dismiss ..9

   C.    Plaintiff's State Law Claims Are Not Preempted .......................11

      1.  *Defendants Unlawfully Label the* Splash *Products by Failing to Disclose the Common or Usual Name of Artificial D-L-Malic Acid*.......................12

      2.  *Defendants Unlawfully Label the Splash Products by Failing to Disclose D-L Malic Acid as an Artificial Characterizing Flavor* .............................13

   D.    Plaintiff Sufficiently Alleges that Defendants' "Good Source of Antioxidants" Advertising Claims Are Misleading...................14

   E.    Plaintiff Has Standing to Assert Claims as to the Ingredient List and Antioxidant Statements ................................................15

   F.    Plaintiff Has Standing to Sue for Products that are Substantially Similar..16

   G.   Plaintiff's Claims Are Not Partially Barred by the Statute of Limitations .18

      1.  *The Delayed Discovery Rule Tolls the Statute of Limitations* .................19

      2.  *Fraudulent Concealment Tolls the Statute of Limitations* .......................20

      3.  *The Continuing Violation Doctrine Tolls the Statute of Limitations* .......21

i

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

H.   Plaintiff Plausibly States a Claim for Breach of Express and Implied
     Warranties ................................................................................................21

I.   Plaintiff Plausibly Alleges Claims as to Defendant Y&R .........................23

V.   CONCLUSION ................................................................................................25

ii

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
    2013 WL 2481549 (S.D. Cal. June 10, 2013)......................................................17

*Allen v. Similasan Corp.*,
    2013 WL 2120825 (S.D. Cal. May 14, 2013)......................................................17

*Allred v. Frito-Lay N. Am., Inc.*,
    2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ............................................. *passim*

*Allred v. Kellogg Co.*,
    2018 WL 1158885 (S.D. Cal. Feb. 23, 2018)....................................... 2, 8, 10, 23

*Anderson v. Jamba Juice Co.*,
    888 F. Supp. 2d 1000 (N.D. Cal. 2012) ..............................................................16

*Aryeh v. Canon Business Solutions, Inc.*,
    292 P.3d 871 (Cal. 2013) ...................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 6, 15, 16

*Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.*,
    2013 WL 633202 (N.D. Cal. Feb. 20, 2013) ......................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................5

*Branca v. Nordstrom. Inc.*,
    2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .....................................................16

*Brown v. Hain Celestial Grp.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ...............................................................18

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) .......................................................................17

*Burton v. Time Warner Cable Inc.*,
    2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .....................................................6

iii

*Cardenas v. NBTY, Inc.*,
 870 F. Supp. 2d 984 (E.D. Cal. 2012) ....................................................17

*Clancy v. The Bromley Tea Co.*,
 308 F.R.D. 564 (N.D. Cal. 2013)...........................................................11

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) ..............................................................19

*Conley v. Gibson*,
 355 U.S. 41 (1957).................................................................................5

*Cover v. Windsor Surry Co.*,
 2015 WL 4396215 (N.D. Cal. July 17, 2015) .....................................19

*Davison v. Santa Barbara High School District*,
 48 F. Supp. 2d 1225 (C.D. Cal. 1998) ...................................................6

*Donohue v. Apple, Inc.*,
 871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................18

*Dorfman v. Nutramax Labs., Inc.*,
 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013).....................................24

*E–Fab, Inc. v. Accountants, Inc. Services*,
 153 Cal.App.4th 1308, 1319 (2007) .....................................................19

*Emery v. Visa Int'l Serv. Ass'n*,
 95 Cal. App. 4th 952 (2002) .................................................................24

*Eminence Capital, LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) ..............................................................25

*Engurasoff v. Coca-Cola Co.*,
 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ............................. 14, 22

*Figy v. Frito-Lay N. Am., Inc.*,
 67 F. Supp. 3d 1075 (N.D. Cal. 2014)..................................................12

*Freeman v. Time, Inc.*,
 68 F.3d 285 (9th Cir. 1995) ..................................................................15

iv

*Gitson v. Trader Joe's Co.*,
  2015 WL 9121232 (N.D. Cal. Dec. 1, 2015)......................................................10

*Gitson v. Trader Joe's Co.*,
  2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ....................................................8

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D. N.Y. 2014) ........................................................... 15, 16

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
  2009 WL 10201128 (C.D. Cal. Dec. 18, 2009) .................................................12

*Hall v. Diamond Foods, Inc.*,
  2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) ......................................................9

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) ..........................................................................................22

*Hayman v. Shoemake*,
  203 Cal. App. 2d 140, 157 (1962) ......................................................................25

*Henderson v. J.M. Smucker Co.*,
  2011 WL 1050637 (C.D. Cal. Mar. 17, 2011).................................................9, 20

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ........................................................... 18, 23

*Herremans v. BMW of N. Am., LLC*,
  2015 WL 12712082 (C.D. Cal. Feb. 19, 2015) ..................................................20

*Hsu v. Puma Biotechnology, Inc.*,
  213 F. Supp. 3d 1275 (C.D. Cal. 2016) ................................................................2

*Hu v. Herr Foods, Inc.*,
  251 F. Supp. 3d 813 (E.D. Pa. 2017) ...................................................................7

*Hunter v. Nature's Way Prod., LLC*,
  2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) ....................................................21

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077 (2008) ......................................................................................11

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

*In re Jamster Mktg. Litig.*,

    2009 WL 1456632 (S.D. Cal. May 22, 2009).........................................................24

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab.*

    *Litig.*, 2011 WL 13160303 (C.D. Cal. Jan. 20, 2011) ........................................20

*Ivie v. Kraft Foods Glob., Inc.*,

    2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................................ 10, 14, 22

*Ivie v. Kraft Foods Glob., Inc.*,

    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ..............................................................7

*Johns v. Bayer Corp.*,

    280 F.R.D. 551 (S.D. Cal. 2012) .......................................................................21

*Jones v. ConAgra Foods, Inc.*,

    912 F. Supp. 2d 889 (N.D. Cal. 2012) ...............................................................15

*Kanfer v. Pharmacare US, Inc.*,

    142 F. Supp. 3d 1091 (S.D. Cal. 2015)..............................................................22

*Keith v. Buchanan*,

    173 Cal.App.3d 13 (1985) .................................................................................21

*Knievel v. ESPN*,

    393 F.3d 1068 (9th Cir. 2005) ............................................................................5

*Koh v. S.C. Johnson & Son, Inc.*,

    2010 WL 94265 (N.D. Cal. Jan. 6, 2010) .........................................................17

*Lilly v. ConAgra Foods, Inc.*,

    743 F.3d 662 (9th Cir. 2014) ..............................................................................9

*Martinez v. Metabolife Internat., Inc.*,

    113 Cal. App. 4th 181 (2003) ............................................................................23

*Miller v. Ghirardelli Chocolate Co.*,

    912 F. Supp. 2d 861 (N.D. Cal. 2012)...............................................................17

*Mollicone v. Universal Handicraft, Inc.*,

    2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ......................................... 16, 17, 18

vi

*Norgart v. Upjohn Co.*,

   21 Cal.4th 383 (1999) ........................................................19

*Odell v. Frueh*,

   146 Cal. App. 2d 504 (1956) ..............................................23

*Ortega v. Nat. Balance Inc.*,

   2013 WL 6596792 (C.D. Cal. Dec. 16, 2013) .....................19

*Regents of University of California v. Superior Court*,

   20 Cal.4th 509 (1999) ........................................................20

*Roberts v. Electrolux Home Prod., Inc.*,

   2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) .......................20

*Ruhnke v. Skinmedica, Inc.*,

   2015 WL 12698447 (C.D. Cal. Jan. 7, 2015) ......................21

*Sagan v. Apple Computer, Inc.*,

   874 F. Supp. 1072 (C.D. Cal. 1994) .....................................6

*Scheuer v. Rhodes*,

   416 U.S. 232 (1974) ..............................................................5

*Starr v. Baca*,

   652 F.3d 1202 (9th Cir. 2011) ...............................................6

*Tapia v. Davol, Inc.*,

   116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...............................25

*Vess v. Ciba-Geigy Corp. USA*,

   317 F.3d 1097 (9th Cir. 2003) ...............................................6

*Victor v. R.C. Bigelow, Inc.*,

   2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .......................9

*Viggiano v. Hansen Nat. Corp.*,

   944 F. Supp. 2d 877 (C.D. Cal. 2013) .............................7, 23

*Von Koenig v. Snapple Beverage Corp.*,

   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ...............................16

vii

*Von Saher v. Norton Simon Museum of Art at Pasadena*,

   592 F.3d 954 (9th Cir. 2010) ...............................................................18

*Williams v. Gerber Prod. Co.*,

   552 F.3d 934 (9th Cir. 2008) ................................. 9, 11, 14, 15

*Wilson v. Frito-Lay N. Am., Inc.*,

   2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ..................................11

**Statutes**

21 U.S.C. § 343(i)(2) ...........................................................................12

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .............................................5

Cal. Bus. & Prof. Code §§ 17500, *et seq.* .............................................5

Cal. Civ. Code §§ 1750, *et seq*...............................................................4

Cal. Com. Code § 2315...........................................................................23

Cal. Health & Safety Code § 109875 .............................................. 11, 12

Cal. Health & Safety Code § 110100(a) ................................................11

Cal. Health & Safety Code §§ 109875 ...............................................4, 10

**Rules**

Fed. R. Civ. P.  23 ................................................................................17

Fed. R. Civ. P. 12(b) .............................................................................5

Fed. R. Civ. P. 12(b)(6)..........................................................................5

Fed. R. Civ. P. 8 ....................................................................................5

Fed. R. Civ. P. 9(b) ............................................................................6, 16

**Regulations**

21 C.F.R. § 101.22(i) ...........................................................................................14

21 C.F.R. § 101.22(i)(2)......................................................................................14

21 C.F.R. § 184.1069 ......................................................................................7, 22

21 C.F.R. § 184.1069(a)......................................................................................12

21 C.F.R. §§ 101.22(i)(3)-(4)..............................................................................13

21 CFR § 101.22.............................................................................................4, 10

21 CFR § 101.4(a)(1)......................................................................................4, 12

21 CFR § 101.4(b)(1)...........................................................................................13

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Plaintiff Hortense Sims ("Plaintiff") on behalf of herself, all others similarly situated, and the general public, respectfully submits this Memorandum of Points and Authorities in Support of her Opposition to the Motion to Dismiss that was filed by Defendants Campbell Soup Company and Y&R (collectively "Defendants") on June 13, 2018. *See* ECF No. 20. For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

## I.  INTRODUCTION

This is a consumer protection class action involving Defendants' failure to disclose the presence of an artificial flavor on their front label of V8 *Splash* fruit and vegetable beverages (the "Products").

The complaint alleges that "[t]he Product is labeled as if it is flavored only with natural ingredients, when in fact it contains undisclosed artificial flavors in violation of state and federal law." Compl., ¶¶ 14-16. "Defendants not only misleadingly label the Products as if they were healthful fruit juice instead of sugar-water," they "unlawfully conceal from California consumers that the Products are artificially flavored." Compl., ¶ 44. Plaintiff alleges that Defendants "flavor the Product with an industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers." "[T]his kind of 'malic acid' is not naturally - occurring, but is in fact manufactured in petrochemical plants from benzene or butane— components of gasoline and lighter fluid, respectively— through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." Compl., ¶¶ 61-63.

Defendants argue that "[m]alic acid is not present in *Splash* as a flavor and does not function as a flavor and, accordingly, need not be labeled as a flavor." Def.s' Mem. at 1:20-22, ECF No. 20. However, as Plaintiff's complaint alleges, Defendants' own website contradicts Defendants' arguments by stating that the malic acid in the *Splash* Products does function as an artificial flavoring ingredient:

1

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**Malic Acid**

> We add it for tartness and flavor and to maintain the safety of our products. Although naturally-occurring in many fruits and vegetables, such as apples, grapes, and rhubarb, the malic acid we use is manufactured and not obtained from natural sources.

Compl., ¶ 56 n. 4 (citing http://www.whatsinmyfood.com/ingredient/); *see also* Declaration of Ronald A. Marron in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss filed concurrently herewith ("Marron Decl."), ¶ 3 & Ex. 1 (attaching print out of Defendants' website).[1] This admission alone is a sufficient basis for denying Defendants' Motion to Dismiss.

Moreover, Plaintiff adequately alleges that the artificial malic acid in the *Splash* Products functions as an artificial flavoring ingredient that imparts or reinforces the "primary recognizable flavor" of each of the *Splash* Products. Compl., ¶¶ 68-76. Other courts have denied motions to dismiss in similar cases alleging the use of malic acid as an artificial flavoring ingredient. *See, e.g., Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ("*Kellogg*"); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ("*Frito-Lay*"). This Court should reach the same conclusion here and deny Defendants' Motion to Dismiss in its entirety.

---

[1] Because Plaintiff's complaint references Defendants' whatsinmyfood.com website (Compl., ¶ 56 n. 4), this Court may consider the website under the doctrine of incorporation by reference. *See Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016). The Court may also take judicial notice of Defendants' whatsinmyfood.com website. *See* Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss filed concurrently herewith. ("Plf.'s RJN").

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This action was filed on April 2, 2018. *See* ECF No. 1. Defendants filed their Motion to Dismiss on June 13, 2018. *See* ECF No. 20. Plaintiff's complaint concerns the deceptive labeling of Campbell's V8 *Splash* fruit juices. (*See generally* Compl.). The V8 *Splash* Products at issue are (1.) V8 Splash® Berry Blend; (2.) V8 Splash® Strawberry Kiwi; (3.) V8 Splash® Tropical Blend; (4.) V8 Splash® Cherry Pomegranate; (5.) V8 Splash® Diet Berry Blend; (6.) V8 Splash® Fruit Medley; and (7.) V8 Splash® Diet Tropical Blend. (collectively the "Products" or "*Splash* Products") (Compl., ¶ 82).



3

Plaintiff alleges that each of the *Splash* Products contain an artificial flavoring ingredient called malic acid that is used to simulate and reinforce the Products' characterizing flavors, but Defendants fail to disclose the artificial flavoring on the front label as required by law. *See* Compl., ¶ 59. "Failing to do so falsely informs the consumers that the Products are flavored only with natural juices or flavors." *See* Compl., ¶ 59. Under California law, Plaintiff alleges this also renders the Product misbranded. *See* Compl., ¶ 84.

"Plaintiff purchased the Products multiple times since January 2014, most recently at the WinCo Foods store located at 3150 North Case Road in Perris, California and paid retail price, typically between $1.98 and $2.98 for a 64-ounce container." Compl., ¶¶ 95-97. Plaintiff was deceived by, and justifiably relied upon, the Products' deceptive labeling, and specifically the omission of the fact that it contained artificial flavorings. Compl., ¶ 98-99.

Plaintiff contends that "[t]he Product's label violates California law in multiple ways." Compl., ¶ 54-76. "First, because the Products contain artificial flavoring ingredients that simulate and reinforce the Products' characterizing flavors, the front labels are required by law to prominently disclose the artificial flavoring. Failing to do so falsely informs the consumer that the Products are flavored only with natural juices or flavors." Compl., ¶ 59 (citing Cal. Health & Safety Code §§ 109875, *et seq.*, ("Sherman Law"), incorporating 21 CFR § 101.22). Second, the Products violate California and federal law because the labels incorrectly identify the artificial flavoring ingredient only as a generic 'malic acid' instead of using the specific, non-generic name of the ingredient, d-l malic acid." Compl., ¶ 60 (citing 21 CFR § 101.4(a)(1)).

Plaintiff alleges Defendants have violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL") and

4

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

have breached express and implied warranties. *See generally* Compl. Plaintiff seeks to represent a class of consumers defined as "[a]ll California citizens who purchased the Products on or after January 1, 2012, for personal use and not for resale, excluding Defendants and Defendants' officers, directors, employees, agents and affiliates, and the Court and its staff." Compl., ¶ 112.

### III.   <u>LEGAL STANDARD</u>

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b) states that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert….by motion." *See* Fed. R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).

"The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied."). Finally, under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## IV.   ARGUMENT

### A.   Plaintiff States a Plausible Claim for Relief

#### 1.   *Malic Acid is Used as an Artificial Flavoring Ingredient in the Splash Products*

Defendants first argue that malic acid is not a "flavor" because not all ingredients that impart "taste" are flavors. Def.s' Mem. 8:17-27. However, Defendants' own website ***admits*** that malic acid is used a flavoring ingredient in the *Splash* Products. *See* Marron Decl., ¶ 3 & Ex. 1; Plf.'s RJN.

Defendants' argument that malic acid does not appear on the FDA's list of

artificial ingredients is also unavailing as the list is not intended to be comprehensive. *See Frito-Lay*, 2018 WL 1185227, at *4 ("Simply because malic acid is not on these lists does not mean that the FDA has determined malic acid is not an artificial flavor."). So the absence of any particular flavoring chemical from those lists is legally meaningless. Notably, d-l-malic acid, which is the flavoring chemical alleged to be in the Products, is recognized as an artificial ingredient by federal and state regulations. *See* 21 C.F.R. § 184.1069 ("Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid.").

Defendants' reliance on *Viggiano v. Hansen Nat. Corp.*, is misplaced because that case involved the ingredients sucralose and ace-k. 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013). In *Viggiano*, the Court concluded only that those specific ingredients (sucralose and ace-k) are not artificial flavoring ingredients pursuant to FDA regulations. Id. Thus, this Court should not find *Viggiano* to be persuasive. Likewise, Defendants' reliance on *Ivie v. Kraft Foods Glob., Inc.* is also misplaced because that case involved potassium citrate and sodium citrate, which were found not to be artificial flavoring ingredients pursuant to FDA regulations. 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). Here, the relevant FDA regulations actually state d-l-malic acid "does not occur naturally." 21 C.F.R. § 184.1069. Defendants' reliance on *Hu v. Herr Foods, Inc.*, is similarly misplaced because the plaintiff in that case failed to "directly allege that citric acid functions as a preservative in any of the Products." 251 F. Supp. 3d 813, 822 (E.D. Pa. 2017). By contrast, Plaintiff specifically alleges that malic acid functions as an artificial flavor in the Products by simulating the tart taste of fresh fruit. Compl., ¶ 56. Thus, Plaintiff's complaint plausibly alleges that d-l-malic acid is an artificial flavoring ingredient. *See* Compl., ¶ 61-63; *see also* Marron Decl., ¶ 3 & Ex. 1; Plf.'s RJN. Therefore, Defendants' Motion to Dismiss should be denied.

### 2. *The Complaint Sufficiently Alleges that Malic Acid Functions as an Artificial Flavor in the* **Splash** *Products and that it Must be Declared on the Front of the Packaging*

Defendants argue that malic acid does not function as an artificial flavor because it is not plausible that "malic acid is able to simulate, resemble and reinforce each distinct Splash flavor, shifting from cherry, to kiwi, to berries" and that "one ingredient, malic acid, can cause products to taste like oranges, strawberries, coconut mango, and dragonfruit." Def.'s Mem. 10: 19-21; 11:17-18; 12:1. Defendants' premise that malic acid is not an elusive shape-shifter misses the mark. According to their logic, the naturally occurring malic acid in fruits cannot contribute and reinforce flavor in oranges, strawberries, dragonfruit, etc., because it is not a standalone flavor. This is incorrect. The alleged function of the d-l malic acid in the *Splash* Products is to stimulate the "tart taste" of fresh fruit. Compl., ¶ 56.

What is more, Defendants admit that malic is added "for flavor." *See* Marron Decl., ¶ 3 & Ex. 1; Plf.'s RJN. As for Defendants' argument that malic acid serves "multiple functions unrelated to being a flavor," it is inconsequential because Plaintiff alleges that it functions as an artificial flavor and Defendants concede this as fact on their website. Compl., ¶ 54-56; Marron Decl., ¶ 3 & Ex. 1; Plf.'s RJN; *see also Kellogg*, 2018 WL 1158885, at *2 ("Allred responds, noting 'Defendants ask the court to look beyond the pleadings and assume, without any factual record, that 'malic acid is not used solely for flavoring purposes.' Allred is correct. At this stage, the Court cannot look beyond the pleadings and must take reasonable allegations as true."); *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors...."). Defendants urge the Court to ignore cases directly on point. Specifically, Defendants take issue with *Kellogg*, 2018 WL 1158885 and *Frito-*

*Lay,* 2018 WL 1185227 by making conclusory arguments that Plaintiff's theory of liability is implausible. Defendants rely on their function arguments as their save-all, but the alleged facts coupled with Defendants' published words on their website show malic acid functions as an artificial flavor, thereby, undermining their position. Insofar as the courts not contending with juice beverages, the reasoning remains the same in that malic acid's role whether it be in a juice or otherwise is not appropriate for determination on a Motion to Dismiss. Therefore, Defendants' Motion to Dismiss should be denied.

>    **B.  Whether a Labeling Statement is Likely to Deceive a Reasonable Consumer is Not Appropriate for Determination on a Motion to Dismiss**

Defendants next argue that no reasonable consumer would conclude *Splash* has no artificial flavors when examining the front label. Def.s' Mem. 13:8-15. But whether or not a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014); *see also Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) ("Defendant argues that since partially hydrogenated vegetable oil, which contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled. Although this factor may be relevant in the fact-intensive reasonable consumer analysis, Williams instructs that such reasoning cannot be the basis for granting a motion to dismiss."); *Hall v. Diamond Foods, Inc.*, 2014 WL 5364122, at *4 (N.D. Cal. Oct. 21, 2014) ("Accordingly, the claims based on Reduced Fat Sea Salt Chips are not subject to dismissal for failure to allege sufficient facts to satisfy the reasonable consumer test.").

Defendants' reliance on *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) is misplaced because in *Victor* the plaintiff failed to

9

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

offer a single explanation as to why the statement "delivers healthful antioxidants" was misleading. *Id.* Instead, plaintiff vaguely argued that "he reasonably expected all consumer products to abide by the relevant regulations." The Court held plaintiff's "expectation is unreasonable as a matter of law." *Id. See also Gitson v. Trader Joe's Co.*, 2015 WL 9121232, at *2 (N.D. Cal. Dec. 1, 2015) (no reasonable consumer would assume soymilk means milk from a cow despite FDA's definition of milk.).

In contrast, this case does not involve blanket assertions of technical violations nor claims that soymilk somehow presents itself as cow milk. Instead, the complaint specifically alleges that "Defendants uses the artificial petrochemical d-l-malic acid in its Products but pretend otherwise, conflating the natural and artificial flavorings, misbranding the Products and deceiving consumers." Compl., ¶ 65. The applicable Health and Safety regulations require Defendants to disclose their use of these artificial flavoring ingredients and it is plausible that Defendants' failure to do so is likely to deceive a reasonable consumer. *See* Cal. Health & Safety Code §§ 109875 (incorporating 21 CFR § 101.22); *Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013); *Kellogg*, 2018 WL 1158885, at *3 ("A reasonable consumer could construe the packaging as depicting all natural ingredients and flavors."); *Frito-Lay*, 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list.").

To the extent Defendants argue the back panel should correct any misunderstandings conveyed from the front label, the *Williams* court advised, "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1   information about the product that confirms other representations on the
2   packaging." *Williams*, 552 F.3d at 939-940.

3       **C.   Plaintiff's State Law Claims Are Not Preempted**

4       Defendants argue that "Plaintiff's claims are preempted as a matter of law
5   because the challenged packaging complies with all federal laws and regulations."
6   Def.s' Mem. at 16. Defendants' argument fails because as the Complaint alleges
7   (Compl., ¶¶ 23-26 et seq.), the challenged packaging does not comply with the
8   Federal Food, Drug, and Cosmetics Act ("FDCA") or California's "Sherman
9   Law," Cal. Health & Safety Code § 109875 *et seq.* "When Congress passed the
10  FDCA and its subsequent amendments creating national uniform nutrition labeling,
11  it expressly preempted state law that was inconsistent with its requirements."
12  *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013). "However,
13  it did not attempt to completely preempt state laws regarding the marketing of food
14  products. To the contrary, Congress specifically anticipated states enacting their
15  own identical laws." *Id.* (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077,
16  1090 (2008)). "California complied with this requirement in passing the Sherman
17  Law, which expressly adopts the federal labeling requirement." *Id.* Under the
18  Sherman Law, "All food labeling regulations and any amendments to those
19  regulations adopted pursuant to the federal act ... shall be the food regulations of
20  this state." *See* Cal. Health & Safety Code § 110100(a).

21      In *Wilson v. Frito-Lay N. Am., Inc.*, the court held that "[s]ince Plaintiffs'
22  state law claims rely on statutes that explicitly incorporate federal law and
23  regulations without modification, and since those claims also do not attempt to
24  impose stricter requirements than those laws or regulations, Plaintiffs' state law
25  claims are not preempted. These claims are all based on the theory that by not
26  complying with the relevant federal laws and regulations, Defendants' labels
27  mislead and deceive consumers." No. 12-1586 SC, 2013 WL 1320468, at *9 (N.D.
28  Cal. Apr. 1, 2013); *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075,

1082 (N.D. Cal. 2014) ("Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code § 109875 *et seq.*, which adopts and incorporates the FDCA."); *Compare Gorenstein v. Ocean Spray Cranberries, Inc.*, 2009 WL 10201128, at *3 (C.D. Cal. Dec. 18, 2009) (plaintiff sought to impose liability on Ocean Spray for requirements different than those mandated by the FDA). Here, unlike *Gorenstein*, Plaintiff's state law claims are based on violations of California's Sherman Law, which is identical to the FDCA (See Compl., ¶¶ 24-27) and Defendants' Motion to Dismiss should therefore be denied.

### 1. Defendants Unlawfully Label the **Splash** Products by Failing to Disclose the Common or Usual Name of Artificial D-L-Malic Acid

Plaintiff alleges that "the Product ingredient list violates federal and state law because it misleadingly identifies the malic acid flavoring ingredient only as a generic 'malic acid' instead of using the specific, non-generic name of the ingredient." Compl., ¶ 60 (citing 21 CFR § 101.4(a)(1)). Defendants argue that "the common or usual name for 'd-l malic acid' is 'malic acid.'" Def.s' Mem. 20:6-9 (citing 21 U.S.C. § 343(i)(2); 21 C.F.R §184.1069(a)).

Defendants' argument here confirms Plaintiff's allegations. When an ingredient has a unique name and a common, generic name, particularly when as here the common name is ambiguous and could refer to more than one ingredient, the label must identify the ingredient by its specific name, not its common name. As the complaint alleges, the natural malic acid, however, is not what Defendants put in the Product. Defendants instead flavor the Product with "an industrial chemical called d-l-malic acid, in the form of a racemic mixture of d- and l-isomers." Compl., ¶ 61-62. D-l malic acid, which is alleged to be contained in *Splash*, "does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid." *See* 21 C.F.R. § 184.1069(a). Defendants' reliance on an FDA letter is unpersuasive as the FDA simply advises that malic acid must be listed on

the label if it is added to a product. *See* Johns Decl. Ex. H. In no way did the FDA declare d-l malic acid's common name to be "malic acid." Because Defendants have failed to disclose their specific use of the artificial d-l-malic acid, they have violated 21 CFR § 101.4(b)(1) and California's Sherman Law.

### 2.   *Defendants Unlawfully Label the Splash Products by Failing to Disclose D-L Malic Acid as an Artificial Characterizing Flavor*

Defendants next argue that Campbell properly labels the Products' characterizing flavors. Def.s' Mem. at 16:16-26. Defendants misinterpret both the relevant FDA regulations and the allegations in the complaint. D-l malic acid is an artificial flavor that "simulate and reinforce the Products' characterizing flavors" and "if a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both." Compl., ¶ 59, 71. Both California law and Federal regulations require that "[i]f a food product's characterizing flavors are not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both natural or artificial flavorings. If any artificial flavor is present which 'simulates, resembles or reinforces' the characterizing flavor, the food must be prominently labeled as 'Artificially Flavored.'" Compl., ¶ 71 (citing 21 C.F.R. §§ 101.22(i)(3)-(4)). Here, the artificial petrochemical, d-l malic acid, is placed in the Product to simulate the tart flavor of fruit but Defendants "pretend otherwise, conflating the natural and the artificial flavorings, misbranding the Products, and deceiving consumers." Compl., ¶ 56, 65. Although the front package of *Splash* states that it is "flavored," the relevant FDA regulations require the Product be labeled as "Artificially Flavored" due to Defendants' use of the artificial flavoring ingredient. Relevant here is 21 C.F.R. § 101.22(i)(2), which states the following:

> If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the

13

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor <u>shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor</u>

21 C.F.R. § 101.22(i)(2) (emphasis added); *Engurasoff v. Coca-Cola Co.*, No. C 13-03990 JSW, 2014 WL 4145409, at *4 (N.D. Cal. Aug. 21, 2014) (interpreting 21 C.F.R. § 101.22(i) and holding that the court "cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor..."); *Ivie*, 2013 WL 685372, at *10 ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."). What is more, the complaint alleges that competing manufacturers correctly label their products." Compl., ¶ 89-92. Because Defendants' conduct is unlawful and unfair, their Motion to Dismiss should be denied.

### D.   Plaintiff Sufficiently Alleges that Defendants' "Good Source of Antioxidants" Advertising Claims Are Misleading

Defendants argue that the "good source of antioxidants" statement is not on the label and that vitamins A and C are present in the Product. Def.s' Mem. 18:13-28. Plaintiff alleges that "Defendants advertise the Products as 'a good source of Antioxidant Vitamins A & C' when "the Products are not a good source of antioxidants or vitamin C." Compl., ¶ 34-35, 56. "Defendants misleadingly label the Products as if they contain healthful fruit juices and supply healthful vitamins, when in fact they consist largely of sugar-water." Compl., ¶ 43. Misleading advertisements and labeling claims are governed by the "reasonable consumer" test. *Williams*, 552 F.3d at 934, 938 (citing *Freeman v. Time, Inc.*, 68 F.3d 285,

289 (9th Cir. 1995)). "Generally, the question of whether a business practice is deceptive presents a question of fact not suited for resolution on a motion to dismiss." *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012) (citing *Williams*, 552 F.3d at 938). Thus, Defendants' Motion to Dismiss should be denied.

### E.   Plaintiff Has Standing to Assert Claims as to the Ingredient List and Antioxidant Statements

Defendants argue that Plaintiff does not allege causation because she "never states that she saw the phrase 'malic acid' or that she believed it to be 'natural.'" Def.s' Mem. 19:20-28; 20:1-5. This argument is unpersuasive. In fact, Defendants cite to a case that shares a contrary view to their position. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D. N.Y. 2014). In *Goldemberg*, plaintiff alleged she was misled by Aveeno's "Active Naturals" label, believing the product to be without synthetic ingredients. *Id.* at 478. The court found causation because "Plaintiff describes in particular the allegedly misleading advertising…then alleges that 'Defendant's false, misleading, and deceptive misrepresentations and omissions…have already deceived and misled Plaintiff….'" *Id.* at 478. The court reasoned "the reasonable inference to be drawn from these allegations, *see Iqbal*, 556 U.S. at 678, is that Plaintiff saw the Aveeno website…and was thus deceived into purchasing the products in questions." *Id.* at 480.

Similarly, here, Plaintiff alleges that she was seeking products "flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring." Compl., ¶ 78. The "Products' labels state, for example, 'berry flavored' with only other 'natural flavors'" and "Defendants advertise the Products as 'a good source of Antioxidant Vitamins A & C.'" Compl., ¶ 34, 173. Plaintiff alleges she was "deceived by and relied upon the Products' deceptive labeling, and specifically the omission of the fact that these Products contain artificial

flavoring," Plaintiff "purchased these Products believing they were naturally-flavored, based on the Product's deceptive labeling," and "would not have purchased the Products in the absence of Defendants' misrepresentations and omissions." Compl., ¶ 99, 103. Seen in tandem with the Product label, Defendants' failure to denote *Splash* as artificially flavored supports Plaintiff's contention that she was misled, and as the *Goldemberg* court reasoned, "the reasonable inference to be drawn" here, *see Iqbal*, 556 U.S. at 678, is that Plaintiff saw the misleading label and advertisement and was thus deceived into purchasing the Product.

Accordingly, Plaintiff has pleaded with sufficient particularity under Rule 9(b). *See, e.g., Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077-78 (E.D. Cal. 2010) (finding Rule 9(b) satisfied where the plaintiffs alleged that during a certain period of time the defendant made certain labeling claims on its drink products, submitted examples of the labels, explained what was misleading about the labels, and alleged that they would not have purchased the products had they known the truth); *Mollicone v. Universal Handicraft, Inc.*, No. 216CV07322CASMRWX, 2017 WL 440257, at *11 (C.D. Cal. Jan. 30, 2017). Therefore, Defendants' Motion must be denied.

## F. Plaintiff Has Standing to Sue for Products that are Substantially Similar

Defendants next argue that Plaintiff lacks standing to assert claims based on Products she never purchased. Def.s' Mem. 20:13-14. This argument fails because each of the Products are substantially similar to the *Splash* Products purchased by Plaintiff. Compl., ¶ 12-15. "[D]istrict courts in this circuit have diverged on the issue of whether a plaintiff has standing to bring claims on behalf of consumers who purchased similar, but not identical products." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005 (N.D. Cal. 2012); *see also Branca v. Nordstrom. Inc.*, No. 14-cv-2062-MMA-JMA, 2015 WL 10436858, at *4 (S.D. Cal. Oct. 9, 2015) ("there is no controlling authority" on the question of whether a plaintiff has

standing to allege claims under the FAL, CLRA, and UCL based on products he did not purchase). Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert such claims. Other courts have held that the standing inquiry is more appropriately resolved on a motion for class certification. The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Other courts have concluded that the majority approach is to resolve the question on a motion for class certification. *See, e.g., Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.") (quotation marks omitted)). This Court should be persuaded by the line of authority concluding that a "[p]laintiff's ability to represent class members injured by similar products should be analyzed under Rule 23, not on a motion to dismiss." *Aguilar v. Boulder Brands, Inc.*, No. 12-cv-01862- BTM-BGS, 2013 WL 2481549, at *3 (S.D. Cal. June 10, 2013); *see also Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Allen v. Similasan Corp.*, No. 12-cv-0376-BTM-WMC, 2013 WL 2120825, at *4 (S.D. Cal. May 14, 2013); *Koh v. S.C. Johnson & Son, Inc.*, No. 09-cv-00927-RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010); *Mollicone*, 2017 WL 440257, at *8.

Plaintiff has pleaded with sufficient particularity that the products she did not purchase are substantially similar to those she did purchase, such that Plaintiff satisfies the heightened pleading requirement imposed for claims sounding in

17

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

fraud. For example, Plaintiff alleges that "Defendants' 'Strawberry Kiwi' Product contains less than 2% of the juices of kiwi fruit and strawberries combined. Defendants cover up the near-absence of actual fruit juice…by adding artificial flavoring…" *See* Compl., ¶¶ 13-14. "The Products are labeled as if they are flavored only with natural ingredients when in fact the Products are artificially flavored." *See* Compl., ¶¶ 15. These allegations of substantial similarity are sufficient at the pleadings stage. *See, e.g., Mollicone*, 2017 WL 440257, at *8; *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014); *Brown v. Hain Celestial Grp.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012). Defendants argue that some of the Products "do not bear the made 'with other natural flavors' statement." Def.s' Mem. 20:21-24. This does not matter because the gravamen of the complaint concerns misrepresentation and the failure to disclose artificial flavors are present on the front label. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012) (allowing plaintiff to represent a class of persons who purchased different but similar products reasoning that "questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage."). Therefore, Defendants' Motion to dismiss should be denied.

## G.   Plaintiff's Claims Are Not Partially Barred by the Statute of Limitations

Defendants argue that Plaintiffs' claims should be dismissed based on the statute of limitations. However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Audio Mktg. Servs., S.A.S. v. Monster Cable Prod., Inc.*, No. C 12-04760 WHA, 2013 WL 633202, at *6 (N.D. Cal. Feb. 20, 2013) ("When a claim is challenged as violating the statute of limitations, courts are limited to the facts

1  alleged in the complaint."). Here, the complaint plausibly alleges that the class
2  period is not barred by the applicable statute of limitations.

3  ### 1. *The Delayed Discovery Rule Tolls the Statute of Limitations*

4  "In California, the discovery rule postpones accrual of a claim until 'the
5  plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v.*
6  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v.*
7  *Upjohn Co.*, 21 Cal.4th 383, 391 (1999)). "A plaintiff whose complaint shows on
8  its face that his claim would be barred without the benefit of the discovery rule
9  must specifically plead facts to show (1) the time and manner of discovery and (2)
10 the inability to have made earlier discovery despite reasonable diligence." *E–Fab,*
11 *Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1319 (2007).

12 Here, the complaint alleges that "Plaintiff did not discover that Defendants'
13 labeling of the Products was false and misleading until March 2018 when she
14 learned the Products contained undisclosed artificial flavoring." Compl., ¶ 108.
15 "Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in
16 her purchase" and "she would not have been able to discover Defendants'
17 deceptive practices and lacked the means to discover them given that, like nearly
18 all consumers, she relies on and is entitled to rely on the manufacturer's obligation
19 to label its products in compliance with state law." Compl., ¶ 108-109. These
20 allegations are sufficient to invoke the delayed discovery rule at least at the
21 pleadings stage. *See Ortega v. Nat. Balance Inc.,* No. CV 13-05942 ABC EX, 2013
22 WL 6596792, at *5 (C.D. Cal. Dec. 16, 2013) ("[I]t is hard to imagine how delayed
23 discovery allegations for the claims of unknown class members could be
24 particularly specific. As such, the Court finds that the FAC sufficiently alleges
25 delayed discovery on behalf of the putative class."); *Cover v. Windsor Surry Co.*,
26 No. 14-CV-05262-WHO, 2015 WL 4396215, at *4 (N.D. Cal. July 17, 2015);
27 *Herremans v. BMW of N. Am., LLC*, No. CV1402363MMMPJWX, 2015 WL
28

19

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

12712082, at *5 (C.D. Cal. Feb. 19, 2015); *see also Henderson*, 2011 WL 1050637, at *2. Thus, the delayed discovery rule tolls the statute of limitations.

### 2.   *Fraudulent Concealment Tolls the Statute of Limitations*

"To establish fraudulent concealment, a plaintiff must plead '(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, No. SAML1002172CJCRNBX, 2011 WL 13160303, at *6 (C.D. Cal. Jan. 20, 2011) (plaintiffs' "allegations are sufficient to establish fraudulent concealment for purposes of a motion to dismiss" and the defendant's "arguments are more appropriately raised in a motion for class certification or in a motion for summary judgment."). "The purpose of this doctrine is 'to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory.'" *Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644 CAS VBKX, 2013 WL 7753579, at *8 (C.D. Cal. Mar. 4, 2013) (quoting *Regents of University of California v. Superior Court*, 20 Cal.4th 509, 533 (1999)).

Defendants' failure "to identify the artificial flavor in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Products –impeded Plaintiff's and Class members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period." Compl., ¶ 109. "Because Defendants actively concealed their illegal conduct by mislabeling the malic acid ingredient in the Products, preventing Plaintiff and the Class from discovering their violations of state law, the Class is entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations." Compl., ¶ 110; *See Henderson*, 2011 WL 1050637, at *2 (declining "to reach Defendant's argument that tolling cannot be alleged on behalf of the putative class members" and holding that "[t]his

argument is premature [when ruling on a motion to dismiss].") (alterations in original); *Ruhnke v. Skinmedica, Inc.*, No. SACV140420DOCRNBX, 2015 WL 12698447, at *2 (C.D. Cal. Jan. 7, 2015) ("The Court agrees with the approach taken in *Henderson* and finds that Defendants' attack is more appropriately addressed at the class certification stage than at the pleading stage."); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) ("Under the UCL and CLRA, whether the class properly includes consumers who purchased before the applicable statutes of limitation is a merits-based, classwide issue."). Thus, the statute of limitations should be tolled under the fraudulent concealment doctrine.

### 3. The Continuing Violation Doctrine Tolls the Statute of Limitations

"The continuing violation doctrine is meant to serve equitable purposes when 'injuries are the product of a series of small harms, any one of which may not be actionable on its own,' or when the plaintiff has alleged 'a pattern of reasonably frequent and similar acts... justifying treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.'" *Hunter v. Nature's Way Prod., LLC*, No. 16CV532-WQH-BLM, 2016 WL 4262188, at *11 (S.D. Cal. Aug. 12, 2016) (quoting *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013)). Because Defendants' deception continues up to the present, the continuing violation exception tolls all applicable statute of limitations for Plaintiffs and all members of the putative Class until Defendants' unlawful advertising and labeling is corrected. Compl., ¶ 110, 119.

### H. Plaintiff Plausibly States a Claim for Breach of Express and Implied Warranties

"A warranty relates to the title, character, quality, identity, or condition of the goods." *Keith v. Buchanan*, 173 Cal.App.3d 13, 20 (1985) (internal citation omitted.). To state a claim for breach of warranty, Plaintiff must allege that: (a) the

21

defendant made a warranty; (b) the product did not comply with the warranty at the time of sale; (c) plaintiff's injury was proximately caused by the defective nature of the product; and (d) the plaintiff suffered damage. *Hauter v. Zogarts*, 14 Cal. 3d 104, 105 (1975). Liability under an implied warranty "does not depend on any specific conduct or promise of defendant, but turns on whether the product is merchantable under the California Uniform Commercial Code." *Id.*

Defendants contend that Plaintiff "does not identify any statement on the product labeling that states it is flavored 'only' with natural flavors." Def.s' Mem. 22:7-8. However, Defendants' argument fails because the complaint sufficiently alleges that the "Products' front labels misleadingly claim by operation of California law that the Products are flavored only with the listed natural fruit flavors." *See* Compl., ¶¶ 172. "The Products' labels state that the Products are, for example, 'berry flavored,' with only other 'natural flavors.'" See Compl., ¶¶ 173. "Defendants add synthetic d-l malic acid…to simulate the 'tart taste' of fresh fruit and conceal the fact that the Products are 95% water and corn syrup and less than 2% fruit juice" and the Court cannot make a factual determination upon a motion to dismiss as to whether [d-l-malic acid] qualifies as an artificial flavor... *See* Compl., ¶¶ 56;172-173; *Engurasoff*, 2014 WL 4145409, at *4; *Ivie*, 2013 WL 685372, at *10. If the Court is to accept as true Plaintiff's allegations that d-l-malic acid is in fact an artificial flavoring ingredient (*See* 21 CFR § 184.1069), then Plaintiff has sufficiently alleged breach of warranties for Defendants' representation that *Splash* contains no artificial flavors. *See* Compl., ¶¶ 154-181.

Defendants contend the implied warranty claim fails because Splash is not unfit for consumption. Def.s' Mem. 23:11-13. However, there are "two separate definitions of merchantability." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. 2015). The implied warranty of merchantability "is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are

22

*Sims v. Campbell Soup Company, et al.*, Case No. 5:18-cv-00668-PSG-SP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

used." *Id.* (citing *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 189 (2003)). Defendants rely on the "particular purpose" definition while Plaintiff relies on the promises on the label. Compl., ¶¶ 173; *see Frito-Lay*, 2018 WL 1185227, at *6 (court denied defendant's motion because plaintiff properly alleged the product "did not conform to the promises or affirmations of fact made on the container or label."); *Kellogg*, 2018 WL 1158885, at *5-6 (court denied defendant's motion for similar reasons); *Hendricks*, 30 F. Supp. 3d at 933  (the products "were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna"). Similarly, here, the Products were not adequately labeled because Defendants did not disclose the presence of artificial flavoring. *See* Compl., ¶¶ 180, 191-193.

Additionally, "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment…there is…an implied warranty." Cal. Com. Code § 2315. "The implied warranty 'is breached if the seller's product is not in fact suitable for the use intended by the purchaser.'" *Odell v. Frueh*, 146 Cal. App. 2d 504, 508 (1956). Here, *Splash* is not suitable for use as a naturally-flavored drink because it is artificially flavored sugar-water and Defendants targeted health-conscious consumers who relied on their skills and judgment when purchasing the Products. Compl., ¶¶ 180-188. *Compare Viggiano*, 944 F. Supp. 2d at 896 (no allegations that Hansen's diet soda was not suitable for use as a diet soda). Based on the foregoing, Defendants' Motion to Dismiss Plaintiffs' warranty claims should be denied.

## I.   Plaintiff Plausibly Alleges Claims as to Defendant Y&R

Defendants argue that Y&R did not breach a duty to Plaintiff by labeling and advertising Splash products and Plaintiff does not show Y&R knew or had control over any alleged wrongdoing by Campbell. This argument fails for Plaintiff adequately alleges UCL, FAL, and CLRA claims against Y&R. A defendant's

23

liability depends on his "personal 'participation in the unlawful practices' and 'unbridled control' over the practices." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002); *see also In re Jamster Mktg. Litig.*, 2009 WL 1456632, at \*9 (S.D. Cal. May 22, 2009) (Liability requires defendant's "participation or control in the alleged unlawful advertising scheme."); *Dorfman v. Nutramax Labs.*, *Inc.*, 2013 WL 5353043, at \*14 (S.D. Cal. Sept. 23, 2013).

In *Dorfman*, the court found Wal-Mart and Rite-Aid could be liable because they "entered into marketing and sales agreements…to further promote and repeat the false and deceptive statements at issue, provided "pictures of the false and deceptive packaging and labeling for the…products," and made "statements on [their] website[s] that repeat and reinforce the false and misleading joint health statements made on the packaging and labeling." *Id.* Similarly, here, Y&R participated and exercised control over the deceptive advertising as defined in Dorfman because "Y&R wrote or approved false and misleading labeling and advertising copy that facilitated the sale of the misbranded Products to consumers." Compl., ¶¶ 21. Defendants misunderstand Cal. Civ. Code § 1770(a) for it imposes liability where a deceptive act is "undertaken by any person in a transaction…that results in the sale or lease of goods." It is more than plausible that Y&R's participation in labeling and advertising deceptive *Splash* labels resulted in the sale of the products as defined by the statute. Defendants' argument that "it is not plausible that an advertising agency approving label designs would be involved in transactions to sell goods to consumers" similarly fails because Y&R acted outside the scope of ordinary advertising media. Def.s' Mem. 24:18-19. Indeed, in addition to advertising, Y&R participated and exercised control by writing or approving the deceptive labels, which is much more involved than third-party broadcasting. Compl., ¶¶ 21.

Plaintiff alleges warranty claims as to Y&R for the same reasons as discussed above – Y&R wrote or approved the misleading labels and

advertisements that constituted the express warranties, and therefore, is jointly liable. *See* Compl., ¶¶ 21. Moreover, "privity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies." *See Hayman v. Shoemake*, 203 Cal. App. 2d 140, 157 (1962); *see also Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1162 (S.D. Cal. 2015) (holding that there is no privity requirement where plaintiff alleged an express warranty based on statements on labels and advertisements). Accordingly, Defendant Y&R's motion to dismiss should be denied.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. If the Court dismisses any portion of the complaint, Plaintiff respectfully requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).


DATED:      August 27, 2018          Respectfully submitted,


                                     */s/ Ronald A. Marron*
                                     RONALD A. MARRON

                                     **LAW OFFICES OF
                                     RONALD A. MARRON**
                                     RONALD A. MARRON
                                     *ron@consumersadvocates.com*
                                     Michael T. Houchin
                                     *mike@consumersadvocates.com*
                                     651 Arroyo Drive
                                     San Diego, California 92103
                                     Telephone: (619) 696-9006
                                     Facsimile: (619) 564-6665
                                     ***Counsel for Plaintiff and the Proposed
                                     Class***